# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| LAVARTER LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10-CV-272 JVB |
| | ) | |
| DR. AHMED, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Lavarter Lewis, a prisoner, was granted leave to proceed on a claim that he was denied adequate medical care for his diabetes while housed at the Elkhart County Corrections Facility ("the jail") as a pretrial detainee. (DE 10.) The defendants moved for summary judgment on the ground that the action is time-barred. (DE 26.) Lewis failed to respond to the motion despite being given proper notice. Nevertheless, as explained in the court's prior order, a question remained over whether he might have a timely claim for the denial of medical care occurring between May and September 2008. (DE 34 at 3.) In light of this, and given the fact that Lewis was proceeding *pro se* at the time, the court afforded him an additional opportunity to respond to the motion. Lewis subsequently retained counsel, and after being granted two extensions, he has now filed a response to the motion. (DE 41.) This response fails to create a genuine issue of material fact, and so the motion for summary judgment will be granted.

The court notes at the outset that Lewis has misconstrued the nature of the defendants' motion. He labels his response as a "Brief in Response to Defendant's Motion to Dismiss," and addresses the standards applicable to motions filed under FED. R. CIV. P. 12(b)(6). (*See* DE 41 at 1, 5.) The defendants did not file a motion to dismiss, but a motion for summary judgment. Unlike the dismissal stage, summary judgment "is the put up or shut up moment in a lawsuit,

when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Summary judgment must be granted in favor of the movant when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Furthermore, because Lewis was responding to a motion for summary judgment, he was required to file a "Statement of Genuine Disputes" identifying the material facts that he contends are disputed. N.D. IND. L.R. 56.1(b)(2). He did not do so, and the court would be warranted in disregarding Lewis's response on this basis. *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 655 (7th Cir. 2011) ("District courts have broad discretion to enforce and require strict compliance with their local rules."); *Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (where the plaintiff failed to comply with Local Rule 56.1, the court was "within its discretion to grant the [defendant's] motion for summary judgment on this basis alone."). Even giving the response due consideration, it is insufficient to defeat the motion for summary judgment.

As outlined in the prior order, Lewis alleged in his complaint that he was denied adequate medical care for his diabetes, which caused him to suffer blackening feet and other medical complications. (*See* DE 6, 34.) He alleged that he began receiving proper care after the judge presiding over his criminal case intervened upon being alerted to the problem at a status hearing. (DE 6 at 3-4.) He alleged that these events transpired sometime between July 2010 and November 2010. (*Id.* at 3.) In support of their motion for summary judgment, the defendants submitted evidence that Lewis was not housed at the jail in 2010; rather, he arrived on July 12, 2007, and left on September 9, 2008, to serve his sentence at an Indiana Department of Correction ("IDOC") facility. (DE 27-1, Keim Aff. ¶ 7.) The defendants also pointed to two grievances Lewis filed in July 2007 and November 2007 complaining about the conditions in the jail's medical isolation ward, where he was housed prior to the state judge's intervention. (*See* DE 6 at 4, DE 6-1.) Based on this evidence, the defendants argued that the events giving rise to this suit occurred no later than November 2007, and that this action filed in May 2010 is therefore untimely.[1] (DE 27.)

As previously explained, it remained unclear whether Lewis might have a timely claim for the denial of medical care occurring between May 2008 and September 2008, since it was unknown when the status hearing before the state criminal judge occurred. (*See* DE 34 at 3-4). Accordingly, the court afforded Lewis an opportunity to file a response to the motion for summary judgment "showing that he was denied proper medical care between May 28, 2008, and September 9, 2008." (*Id.*) He was directed to "attach any documentation he has in his possession or can obtain pertaining to his medical care during those dates, including any

---

[1] A two-year statute of limitations applies to actions brought under 42 U.S.C. § 1983 by Indiana plaintiffs. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005).

documentation regarding the status hearing at which the state criminal judge ordered the jail to provide him with proper medical care." (*Id.* at 4.)

Lewis submits documentation along with his response brief, but it does not support his argument that the complaint is timely.[2] (*See* DE 41 at 9-18.) Specifically, he submits records showing that the status hearing referenced in his complaint occurred on November 5, 2007. (DE 41 at 10-11.) He previously acknowledged that he began receiving proper medical care immediately following this hearing, and so this evidence serves to defeat his argument that he has a claim for the denial of medical care in 2008.[3] (*See* DE 6 at 4) ("As a result of this directive by the judge. . . I was transfer[r]ed out of the isolation ward and prescribed and administered the dosage of insulin that I had been vehemently requesting."). Although Lewis argues generally that he was denied proper care between May and September 2008, he does not designate any facts or submit any medical records supporting this argument. The only medical record he submits is an intake form completed in September 2008 upon his arrival at an IDOC facility, but this document only indicates that he had been treated for diabetes. (DE 41 at 15.) According to the form, Lewis told the nurse that jail medical staff "wanted him to take insulin" but that he was "afraid of needles." (*Id.*) In short, Lewis's submission fails to create a factual dispute over whether he was denied medical care at the jail between May and September 2008.

---

[2] Lewis, through counsel, now acknowledges that the dates in his complaint were erroneous. (DE 41 at 7.) Lewis obviously knew that he left the jail years before the dates listed in his complaint, which he signed under penalty of perjury. (DE 6 at 6.) In this instance the court will presume that Lewis made a scriveners' error rather than that he was attempting to mislead the court in order to survive screening.

[3] Lewis submits a memorandum prepared by the jail medical director in response to the judge's inquiry. (DE 41 at 13.) She informed the judge that since arriving at the jail Lewis had been uncooperative with the efforts of jail medical staff to control his diabetes, including in one instance cursing at the doctor and giving him "the finger." (*Id.*) She stated that he had refused his medication and blood sugar checks on occasion, and was seen purchasing food items at the commissary that were not part of a diabetic diet. (*Id.*) His commissary privileges were subsequently taken away and he was moved to the medical ward so that medical staff could attain better control over his diabetes. (*Id.*)

In an attempt to preclude summary judgment, Lewis argues that the statute of limitations did not begin running on his claims until September 2008, when he was transferred out of the jail. (DE 41 at 7.) A claim accrues under 42 U.S.C. § 1983, and the statute of limitations begins running, when the plaintiff has a "complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Malone v. Corrs. Corp. of Amer.*, 553 F.3d 540, 542 (7th Cir. 2009) (plaintiff's claim against prison staff accrued when he "knew of his injury and could have filed suit"). Here, it is apparent that Lewis was aware of his injury prior to September 2008, as he makes clear in his complaint that he was complaining about his medical care in 2007. (*See* DE 6, 6-1.) It is also clear that he had been injured as of November 2007, as he claims to have been suffering from a very visible consequence of the lack of proper care—blackening feet—as of that date. (*Id.*) He thus had a complete cause of action as of November 2007 and could have brought suit as of that date. Accordingly, his argument is unavailing.

Lewis also argues that his claims are timely under the "continuing violation doctrine." (*See* DE 41 at 7.) The continuing violation doctrine permits a plaintiff to "reach back" to the beginning of an unlawful course of conduct, "even if that beginning lies outside the statutory limitation period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). The Seventh Circuit has observed that "[l]ike too many legal doctrines, the 'continuing violation' doctrine is misnamed." *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). The court explained:

> Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait

> until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries. . . . The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. . . . It is thus a doctrine not about a continuing, but cumulative, violation.

*Id.* The scenario described by the Seventh Circuit is what Lewis is seeking to do here. The continuing violation doctrine did not permit him to delay bringing suit until May 2010 when he was aware of his injury as of November 2007, and perhaps earlier. Based on the record, the defendants are entitled to summary judgment.

For these reasons, the court **GRANTS** the motion for summary judgment (DE 26) and **DIRECTS** the clerk to enter judgment in favor of the defendants.

**SO ORDERED** on January 9, 2012.

      s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division